1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    JESSICA L. ALCALA,                  Case No.  13-cv-05344-JSC

              Plaintiff,
8
                                         ORDER GRANTING PLAINTIFF'S
9         v.                             MOTION FOR SUMMARY JUDGMENT
                                         IN PART AND REMANDING CLAIM
10   CAROLYN W. COLVIN,                   FOR FUTHER PROCEEDINGS BY
                                         ADMINISTRATIVE LAW JUDGE
              Defendant.
11                                        Re: Dkt. Nos. 15, 19

12

13          Plaintiff Jessica Alcala seeks social security disability benefits for a combination of

14   impairments including a back injury, right shoulder injury, and cervical and thoracic spine

15   problems.  Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the

16   final decision by the Commissioner of Social Security ("Commissioner") denying her benefits

17   claim.  Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.

18   (Dkt. Nos. 15, 19.)  Because the Administrative Law Judge ("ALJ") committed legal error,

19   implicitly discrediting the opinion of an examining physician without providing express rationale,

20   Plaintiff's motion for summary judgment is GRANTED IN PART and Defendant's cross motion

21   is DENIED.  Because further administrative proceedings would serve a useful purpose, and the

22   ALJ could still find that Plaintiff is not disabled even if the discredited opinion were credited as

23   true, the case is REMANDED for further proceedings.

24                              **LEGAL STANDARD**

25          A claimant is entitled to disability insurance benefits if she can demonstrate that she is

26   unable to engage in substantial gainful activity due to a medically determinable physical or mental

27   impairment that can be expected to result in death or last for a continuous period of not less than

28   12 months.  42 U.S.C. § 423(d)(1).  The ALJ conducts a five-step sequential inquiry to determine

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

whether a claimant is entitled to benefits.  20 C.F.R. § 416.920.  At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work; if the claimant is not capable of performing past relevant work, the fifth and final step asks whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience.  *Id.*; §§ 404.1520(b)-404.1520(f)(1).

## THE ADMINISTRATIVE RECORD

Plaintiff was born on December 8, 1974.  (AR 75.)  She is married with two children, and lives with her children and husband in a home that they rent.  (*Id.*)  As of her hearing, Plaintiff measured 5 feet tall and weighed 190 pounds.  (AR 76.)  Plaintiff graduated from high school. (*Id.*)  At the time of her hearing, she was a beneficiary of CalWORKS and Medi-Cal.  (AR 77.) Plaintiff worked as a housekeeper from 1998 to 2001 (AR 93), but has not worked since her injury in 2001.  (AR 485.)

Plaintiff alleges that she became disabled in October 2001, when she was 26 years old, due to a lower back injury, right shoulder injury, and cervical and thoracic spine problems.  (AR 201, 238.)  In March 2008, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI, respectively.  (AR 212-223, 238.) The applications were denied initially, on reconsideration, and after a hearing by an ALJ in September 2010.  (AR 42-53, 106, 112, 117.)  The Appeals Council denied review, making the ALJ's decision final.   (AR 27.)  Thereafter, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Dkt. No. 1 at 3.)

2

## I. MEDICAL EVIDENCE

During December of 2000, Plaintiff was seen at Community Medical Center for right side pain that was radiating into her back.  (AR 360.)  In January 2001, Plaintiff returned to Community Medical Center for a follow-up, complaining of back pain that had lasted for three weeks and tenderness in the low back, especially on the left side.  (AR 361.)  In October 2001, Plaintiff saw Dr. Robert Santos at ValleyCare, indicating that she had suffered an injury a week prior while she was cleaning a home during her employment with Molly Maids.  (*Id.*)  Dr. Santos diagnosed a lumbar strain.  (*Id.*)  Plaintiff stated that the injury occurred when she picked up a pail and a broom and then felt pain in her back.  (AR 482.)

Within a couple of weeks, Plaintiff returned to ValleyCare for a check-up on her lumbar strain and complaining of sharp pain in the lower back in the range 8/10.  (AR 361.)  Less than a week later, she was referred for an MRI, which Dr. Santos interpreted as showing an annular bulge at the L4-5 vertebra, without significant spinal stenosis, with a mild degree of bilateral neural foraminal narrowing, and at the L5-S1 vertebra, a mild bulge causing mild left greater than right inferior neural foraminal compromise.  (AR 361-62.)

As set forth below, over the next four years Plaintiff was seen by numerous physicians in connection with a workers compensation claim she filed relating to the aforementioned October 2001 injury while working for Molly Maids.  (AR 336.)

In December 2001, Plaintiff twice saw Dr. James Fontaine of the Northern California Spine Institute.  (AR 336.)  Plaintiff stated that there had been no improvement in her symptoms. (*Id.*)  Dr. Fontaine diagnosed a lumbar strain and lumbar degenerative disc disease.  (AR 340.)  Dr. Fontaine went on to note that Plaintiff was not responding to treatment, that there were no significant abnormalities based on the MRI report, and that he was concerned with the possibility of somatic overlay.  (*Id.*)  The record is inconsistent as to whether Dr. Fontaine reviewed Plaintiff's MRI.  The progress report states that "[h]er MRI is not available," yet later states, "I reviewed the lumbar MRI scan."  (AR 336.)  On her second visit, Dr. Fontaine affirmed his earlier opinion that Plaintiff "sustained a mild lumbar strain," and that he "suspect[ed] emotional overlay," concluding that Plaintiff's back pain "seems to be out of proportion to the mechanism of

injury and the MRI findings." (*Id.*)  Dr. Fontaine concluded that Plaintiff could return to work.

(*Id.*)  Plaintiff disagreed with Dr. Fontaine's recommendation and noted that she planned to

change treating physicians.  (AR 336-37.)

Between these two visits to Dr. Fontaine, Plaintiff visited the ValleyCare Emergency

Room complaining of severe right shoulder pain radiating into trapezius related to an injury some

months before.  (AR 334.)

Shortly thereafter, Plaintiff began to see Dr. Frigard, a chiropractor (AR 363), who

diagnosed a chronic lumbar sprain and strain which was moderate to severe, lumbar disc disorder

moderate to severe at L4-5 and L5-S1, and lumbar radiculitis that was chronic, moderate to severe.

(AR 382.)  Dr. Frigard noted that subjectively, Plaintiff was experiencing "constant moderate to

severe low back and right leg pain."  (*Id.*)  Objectively, Dr. Frigard noted "decreased thoraco-

lumbar range of motion with pain at end range.  Deep muscular tension with tenderness at L4-5-

SI."  (*Id.*)  Dr. Frigard recommended chiropractic therapy and physiotherapy.  (*Id.*)

On April 13, 2002, Dr. Madireddi completed a Supplemental Qualified Medical Evaluation

based on an examination of Plaintiff and his review of Plaintiff's medical records.  (AR 465.)  Dr.

Madireddi noted Plaintiff's subjective complaints of moderate pain in the lumbar spine radiating

into the thoracic spine and posterior scapular region and right lower extremity.  (AR 477.)  In

terms of objective factors, Dr. Madireddi noted the MRI findings of lumbar disc disease at L4-5

and L5-S1, and tenderness on palpitation of the lumbar spine, right gluteal muscles, and right

forearm.  (*Id.*)  Dr. Madireddi diagnosed chronic lumbar pain with right lower extremity radicular

symptoms and right upper extremity chronic strain, opining based on the latter that Plaintiff's

injury precluded her from repeated use of her right arm.  (*Id.*)  A month later, Dr. Madireddi

submitted a follow-up report stating that after reviewing additional records detailing the

inconsistencies between Plaintiff's subjective complaints and her observed activity levels, he

decided not to alter his opinion.  (AR 469.)  A month later, Dr. Madireddi reviewed additional

MRIs and again did not alter his opinion.  (AR 467.)

Around this same time, Dr. Frigard completed a permanent and stationary report listing

diagnoses of lumbar sprain and strain, lumbar disc disorder at L4-5 and L5-S1, and lumbar

United States District Court
Northern District of California

4

radiculitis.  (AR 391.)  Objective findings included "[n]arrowed disc spaces between S5-S1.  Neuroforaminal encroachment between L5-S1.  MRI report of 11-28-01, Samuel Choi, M.D. with the following impression: Annular bulge at L4-5 without significant spinal stenosis with a mild degree of bilateral inferior neural foraminal narrowing…"  (AR 387.)  Dr. Frigard opined that Plaintiff could not return to her usual occupation but could perform in another line of work.  (*Id.*)  Dr. Frigard also prohibited Plaintiff from lifting more than 30 pounds, repeated bending, and repeated stooping.  (AR 389.)  Dr. Frigard submitted progress reports on July 7, September 18, and December 2, 2002, as well as February 3, 2003 in all of which Plaintiff reported moderate to severe back pain and Dr. Frigard's diagnoses remained the same.  (AR 382-85.)  Dr. Frigard continued to recommend chiropractic and physical therapy.  (*Id.*)

On February 6, 2003, Dr. Ansel completed a qualified medical examination, including a physical examination and a review of medical history up to that point.  (AR 354-381.)  Dr. Ansel concluded that Plaintiff "sustained a musculoligamentous strain referable to her low back as a result of the incident in question from which she should have recovered fully and probably had recovered fully by the end of 2001."  (AR 379.)  Dr. Ansel agreed that Plaintiff could be regarded as permanent and stationary by the end of 2001, but added, "[i]t is my impression that the patient's subjective complaints significantly exceed her objective findings.  The MRI findings are certainly not very dramatic, and there is nothing on her physical examination to indicate the likelihood that this patient has significant disc disease or significant radiculopathy."  (*Id.*)  Dr. Ansel opined that subjective factors of disability consisted of "absent to minimal discomfort in the low back while engaged in heavy work activities, increasing to occasional slight discomfort with very heavy lifting," and that objective factors consist "only of the very minor abnormalities on the MRI of the low back." (AR 379-80.)  Dr. Ansel opined that chiropractic treatments, which were of no benefit, should be discontinued.  (AR 380.)  He also said, "[t]he patient is not regarded as a Qualified Injured Worker or in need of vocational rehabilitation.  She is not in need of ongoing chiropractic care.  She would be best served by a program of active exercise to strengthen her back and neck musculature."  (AR 351.)

Two months later, Dr. Madireddi reviewed Dr. Ansel's opinion and again declined to

revise his own opinion.  (AR 465.)

Two years later Dr. Baker, an orthopedic specialist, examined Plaintiff.  (AR 481.)  In that examination, Plaintiff stated that she had received no formal treatment for her conditions since late 2003, and that her conditions remained unchanged.  (AR 484.)  Plaintiff complained of migraines, low back pain, and pain in the neck and shoulder region and into the right arm.  (AR 484.)  Dr. Baker noted that Plaintiff moved easily with no supportive devices or ambulatory aids.  (AR 487.)  Dr. Baker diagnosed a lumbrosacral strain, secondary cervicothoracic pain, and right forearm myofasciitis.  (AR 489.)  Dr. Baker also noted that while Plaintiff reported that her pain could reach 8-9/10, "the examination [did] not disclose radiculopathy, myelopathy, positive tension signs, etc." (AR 491.)  Dr. Baker concluded that Plaintiff's "symptomatology can be characterized as Intermittent and Moderate [sic] with heavy lifting and excessive spinal motions." (*Id.*)  Finally, Dr. Baker opined that Plaintiff should be precluded from heavy lifting and that she was unable to do her previous work.  (AR 491.)  Dr. Baker also ordered tests during that visit.  (AR 489.)  Plaintiff's subsequent lumbar MRI and pelvic X-ray were normal.  (AR 494-95.)

Three years later, Dr. Calvin Pon examined Plaintiff in connection with her application for disability benefits.  (AR 527.)  Dr. Pon diagnosed "chronic right shoulder pain, possible bursitis, possible rotator cuff tendinitis." (AR 529.)  Dr. Pon also diagnosed "chronic right hand numbness" and "chronic low back pain," noting that there was "no other hard, objective evidence of a lumbrosacral nerve root impingement" after reviewing Plaintiff's November 2001 and November 2007 MRI studies.  (*Id.*)  In assessing Plaintiff's functional capacity, Dr. Pon opined:

> Claimant should be able to stand and/or walk for a total of 4 to 6 hours during an 8 hour workday.  She should be able to sit for a total of 6 hours during an 8 hour workday.  Stooping should be limited to occasionally.  Crouching, kneeling and squatting should be limited to occasionally.  She should be able to climb stairs on an occasional to frequent basis.  Climbing ladders and crawling should be limited to occasionally.
>
> There is no restriction in performing bilateral pushing and pulling left arm/hand control.  In spite of her complaint of right shoulder pain, she should still be able to perform pushing and pulling right arm/hand control on a frequent basis.  In spite of her complaint of bilateral lower extremity pain and numbness, she should still be able to perform bilateral pushing leg/foot control on a frequent basis.  She should be able to lift and carry frequently 10 lbs. and occasionally 20 lbs.

United States District Court
Northern District of California

> There is no limitation in reaching using her left shoulder. *Reaching using her right shoulder should be limited to occasionally.* There is no limitation in her ability to perform gross and fine manipulative tasks with her left hand.  In spite of her complaint of left hand numbness, there is no functional impairment of her right hand, and she should be able to perform gross and fine manipulative tasks with her right hand on a frequent basis."

(AR 529 (emphasis added).)

Throughout 2008, Plaintiff received care from Axis Community Health.  On three separate occasions she was seen with complaints of chronic lower back pain. (AR 555-60.)  A further MRI of Plaintiff's cervical spine showed "abnormal lateral alignment with reversal of the normal cervical lorgosis." (*Id.*)  The shoulder MRI was characterized as a "normal study."  (AR 564.)

In January 2009, Plaintiff was seen by Dr. Chou at UCSF Neurospinal Disorders Program following a referral from Dr. Fortani.  Dr. Chou requested additional lumbar and cervical spine MRIs (AR 568) which revealed a "normal appearing spinal cord" with "good position and alignment of the cervical spine with preservation of disc and vertebral body height as well as signal . . . ," yet noted "[m]ild degenerative disc and facet disease is seen at C5-6 and C6-7."  (AR 575.)  A second lumbar spine MRI showed "degenerative disc disease at L5-S1 with mild retrolisthesis of L5 on S1, stable by comparison with 2/8/08 study.  No evidence of left-sided nerve root impingement.  No evidence of root impingement throughout the lumbar spine."  (AR 577.)  The right shoulder study was normal.  (AR 579.)  Plaintiff's cervical spine study showed "reversal of the normal cervical lordosis."  (AR 580.)  A lumbar MRI without contrast showed "3-4 mm of central disc herniation at L5-S1, approximately 2-3 mm of left posterolateral disc bulge which is moderately narrowing the left neural foramina."  (AR 581.)

Around this same time, Dr. Aulakh of Behavioral Health Consultants conducted a complete psychiatric evaluation of Plaintiff at the agency's request.  (AR 569.)  Dr. Aulakh found Plaintiff capable of managing her own funds, but noted that she may need support and encouragement, and may have difficulty maintaining concentration during eight-hour workday. (AR 572.)

Shortly thereafter, Dr. Regan completed a psychiatric review and RFC assessment of Plaintiff.  (AR 590.)  Dr. Regan diagnosed anhedonia, sleep disturbance, decreased energy,

difficulty concentrating (*Id.*), depression (AR 591), anxiety (but no specific disorder determined) (AR 592), and found that Plaintiff would have moderate limitations on activities of daily living, difficulties in maintaining social functioning, concentration, persistence or pace.  (AR 596.)  Dr. Regan noted public contact should be limited as a component of Plaintiff's vocation.  (AR 601.)

Plaintiff was examined by her treating physician Dr. Fortani on September 10, 2009 in connection with his submission of a Medical Source Statement Concerning the Nature and Severity of an Individual's Lumbar Spine Impairment.  (AR 696.)  Based on Plaintiff's March 2009 MRI showing evidence of degenerative disc disease, Dr. Fortani diagnosed "lower back pain secondary to disc prolaps [sic] at L4-L5 due to injury and chronic neckpain [sic] with DDD at C5-6-7."  (AR 693.)  Dr. Fortani noted that emotional factors contributed to the severity of Plaintiff's pain.  (AR 694.)  Dr. Fortani further opined that Plaintiff could only walk one half block and could only sit for 20 minutes at a time, stand for 30 minutes at a time, would need to walk around at 20 minute intervals, would require unscheduled breaks every 20 minutes during the workday for a duration of 10 minutes, that Plaintiff would require the use of a cane or assistive device, and that Plaintiff could rarely lift less than 10 pounds and never lift more than that.  (AR 694-95.)  Dr. Fortani further opined that Plaintiff could never twist, stoop, or climb ladders, and only rarely crouch/squat or climb stairs, had significant limitations in repetitive reaching, and would be absent from work an average of four days per month due to her impairments.  (AR 695.)  At the bottom of the last page of the questionnaire, Dr. Fortani wrote, "This questionnaire was filled out by asking pt's [sic] general ability—" at which point the sentence is cut off, by the method in which the document was scanned or sent by facsimile.  (*Id.*)

## II.    PLAINTIFF'S ALJ HEARING TESTIMONY

At the ALJ hearing, Plaintiff testified that she experiences shooting pains and burning sensations in her back, as well as numbness and tingling.  (AR 78.)  She confirmed having degenerative disc disease, a right shoulder strain, some carpal tunnel, depression, anxiety, and migraines.  (*Id.*)  She denied back problems before the October 2001 injury.  (*Id.*)  Plaintiff testified that pain was constantly at an 8/10 and that she was recently diagnosed with fibromyalgia or myofascial pain.  (AR 79, 82.)  She stated that she could only walk one half block before she

would need to stop and rest, but did not use a cane or assistive device, and could only sit for 30 minutes at a time. (AR 83-84.) She indicated that she does not have any hobbies, that she mostly rests and watches television during the day. (AR 85-86.) She is able to get dressed by herself except for putting on her socks and shoes. (AR 85.) Either she or her husband does the grocery shopping and cooking; her children do the remainder of the household chores. (AR 86.)

## III.   VOCATIONAL EXPERT

The ALJ presented vocational expert ("VE") Gerald Belchick with a hypothetical of an individual who could lift 20 pounds occasionally, lift or carry up to ten pounds frequently, stand or walk for four to six hours per eight-hour work day with normal breaks, occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl with work limited to one to two step, simple, routine, and repetitive tasks involving simple, work-related decisions with few if any workplace changes and occasional interaction with the public. (AR 94.) The expert testified that such a person could not perform Plaintiff's past work. (*Id.*)

The ALJ then presented the expert with a hypothetical person of Plaintiff's age, education, and work experience, with the above limitations, and the expert testified that such a person could perform the job of cashiering, DOT code 211.462-010, with an SVP of 2, of which there are 11,000 jobs locally and almost a million nationally. (AR 95.)

The ALJ then modified the first hypothetical of an individual who could lift 20 pounds occasionally, etc., adding the following manipulative limitations: overhead reaching on the right, limited to *frequent*; handling, fingering, and feeling limited to frequent with the right dominant upper extremity. (AR 95-96 (emphasis added).) The expert testified that such an individual could not perform Plaintiff's past work but could perform the job of assembler, light, DOT 706.684-022, SVP 1 and 2, of which 2,200 jobs exist locally and 400,00 exist nationally, and packaging assembler, DOT 920.587-018, SVP 1 and 2, of which 2,100 jobs exist locally and 213,000 nationally. (AR 96.)

Finally, the expert explained that missing more than four days of work per month and elevating one's feet would both be work preclusive. (AR 97.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**IV.    ALJ'S OPINION**

2    The ALJ found Plaintiff not disabled under the five-step evaluation used in the disability

3  analysis.  (AR 46-47.)  *See* 20 C.F.R. §§ 404.1520, 416.920.  At the first step, the ALJ found that

4  Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (AR 51.)  At

5  the second step, the ALJ found that Plaintiff had the severe impairments of right shoulder strain,

6  right carpal tunnel syndrome, depression, anxiety, and myofascial pain syndrome.  (AR 52.)  At

7  the third step, the ALJ found that Plaintiff did not have impairments that met or equaled a listed

8  impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Between the third and fourth steps, the

9  ALJ found that Plaintiff retained the RFC to perform light work with the additional limitations of

10  only occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolding; only

11  occasional balancing, stooping, kneeling, crouching, or crawling; only frequent overhead reaching,

12  handling, fingering, and feeling with the right upper extremity; only one-to-two step simple,

13  routine, and repetitive tasks; only simple, work-related decisions; with few, if any, workplace

14  changes; and only occasional interaction with the public.  (AR 52.)  Thereafter, at the fourth step,

15  the ALJ found that Plaintiff could not perform any past relevant work.  (AR 52.)  At the fifth step,

16  the ALJ found that there was other work in the national economy that Plaintiff could perform,

17  such as the representative occupations of assembler, of which there exist 2,200 jobs in the local

18  economy and 400,000 jobs in the national economy, and packaging, of which there exist 2,100

19  jobs in the local economy and 213,000 jobs in the national economy.  (AR 52.)  The ALJ

20  therefore found that Plaintiff was not disabled under the Social Security Act.  (AR 53.)

21    <center>**STANDARD OF REVIEW**</center>

22    The Court's jurisdiction is limited to determining whether the Social Security

23  Administration's denial of benefits is supported by substantial evidence in the administrative

24  record.  42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if it is

25  not supported by substantial evidence or if the decision is based on legal error.  *Andrews v.*

26  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

27  1989).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

28  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Andrews*, 53 F.3d at 1039.  In reviewing a decision of Commissioner of Social Security

Administration denying disability benefits, the Court must consider the entire record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.  42

U.S.C.A. § 405(g); *Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218 at *11 (9th Cir. July 14,

2014).  Determinations of credibility, resolution of conflicts in medical testimony and all other

ambiguities are to be resolved by the ALJ.  *Magallanes*, 881 F.2d at 750.  The decision of the ALJ

will be upheld if the evidence is "susceptible to more than one rational interpretation."  *Andrews*,

53 F.3d at 1040.

# DISCUSSION

The ALJ's determination at step five is the only issue in this case.  At step five, if the

claimant is not capable of performing past relevant work, the ALJ determines whether the

claimant can perform any other work based on the claimant's residual functional capacity, age,

education, and work experience. *Id.* 404.1520(b)-404.1520(f)(1).  Here, the ALJ found that

Plaintiff has the RFC to perform a significant number of alternate occupations existing in the

national economy.  (AR 52.)  Plaintiff's sole contention on appeal is that this finding is not

supported by substantial evidence because the ALJ impermissibly dismissed the opinion of

examining physician Dr. Pon regarding Plaintiff's right shoulder restriction when formulating the

RFC.  Defendant counters that the ALJ properly did not give full credence to Dr. Pon's opinion

because the ALJ based his opinion on the record as a whole which did not support a finding that

Plaintiff was disabled, and alternatively, that the ALJ's exclusion of Dr. Pon's shoulder restriction

was proper because the shoulder restriction was "explicitly based" on Plaintiff's subjective

characterizations of her symptoms which the ALJ had found not credible.  (Dkt. No. 19 at 5.)

### A.   The ALJ Implicitly Dismissed the Opinion of Dr. Pon Without Setting Forth Specific Legitimate Reasons

Plaintiff contends that the ALJ impermissibly dismissed the examining physician's opinion

without substantial evidence.   In particular, Plaintiff alleges that the ALJ erred in concluding that

Plaintiff could perform "frequent overhead reaching, handling, fingering and feeling with right

United States District Court
Northern District of California

1    upper extremity" because (1) Dr. Pon had concluded that Plaintiff's "reaching using her right

2    shoulder should be limited to occasionally," (AR 50); and (2) the ALJ did not explicitly reject Dr.

3    Pon's opinion in whole or in part.

4         Social Security regulations provide that treating sources be given controlling weight when

5    they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques

6    and [are] not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

7    404.1527(c)(2).  If the treating source is not contradicted by substantial evidence, clear and

8    convincing reasons must be given for rejecting the treating source opinion.  *Thomas v. Barnhart*,

9    278 F.3d 947, 958–59 (9th Cir. 2002).  The ALJ must cite specific and legitimate reasons for

10   rejecting the opinion of a treating physician in favor of a conflicting opinion by an examining

11   physician.  *Id*. at 957.  The standard is similar for rejecting examining source opinions.  *See Lester*

12   *v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) ("the Commissioner must provide clear and

13   convincing reasons for rejecting the uncontradicted opinion of an examining physician . . . the

14   opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for

15   specific and legitimate reasons that are supported by substantial evidence in the record." (citations

16   and internal quotation marks omitted)).

17        Here, in his assessment of Plaintiff's RFC, the ALJ stated that he "considered all of the

18   opinions of both examining and treating physicians and state agency medical consultants, based on

19   their review of the medial evidence of record" and "g[ave] no controlling weight to any one

20   physician's opinion but . . . rejected the profound limitations imposed by Dr. Fortani."  (AR 50-

21   51.)  The ALJ rejected the opinion of Plaintiff's treating physician Dr. Fortani based in part on the

22   contrary conclusions of examining orthopedist Dr. Pon.

23        The sole issue before the Court is whether the ALJ erred in rejecting Dr. Pon's finding that

24   Plaintiff was limited in reaching with her right shoulder.   Plaintiff does not make any arguments

25   regarding the ALJ's rejection of Dr. Fortani's opinion or that of any other physician.  Nor does

26   Plaintiff challenge the ALJ's finding that Plaintiff's subjective complaints were not fully credible

27   (AR 50; Dkt. No. 19 at 5.)

28        The Court concludes that the ALJ failed to set forth specific and legitimate reasons for

United States District Court
Northern District of California

12

rejecting Dr. Pon's functional limitation.  "When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.  In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  *Garrison v. Colvin*, 12-15103, 2014 WL 3397218 at *14 (9th Cir. July 14, 2014) (internal citation omitted).   Here, the ALJ offered no reasons for rejecting Dr. Pon's opinion that Plaintiff be limited to occasional reaching with her right upper extremity; instead he appears to have ignored this aspect of Dr. Pon's opinion and in doing so, erred in determining that Plaintiff has not been under a disability as defined in the Social Security Act. (AR 52.)  The absence of any rationale whatsoever fails to amount to even the "mere scintilla" that may constitute "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ's error in rejecting Dr. Pon's opinion without setting forth specific and legitimate reasons for doing so cannot be considered harmless error because the error is neither nonprejudicial nor inconsequential to the ultimate disability determination.   *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (a harmless error is one which is "inconsequential to the ultimate nondisability determination" in the context of the record as a whole).  If the ALJ had accepted Dr. Pon's reaching limitation, it is unclear whether this would have changed the ultimate disability determination.  The ALJ asked the VE a hypothetical which included a limitation on "overhead reaching on the right, limited to *frequent*" (AR 95 (emphasis added)), but Dr. Pon concluded that Plaintiff's functional limitation should include "Reaching using her right shoulder should be limited to *occasionally*  (AR 529 (emphasis added)).  The record is thus unclear as to whether with a reaching limitation of occasionally there would be jobs in the national economy available as there were under the frequent reaching limitation such that the ALJ could have otherwise concluded that Plaintiff was not disabled.  Accordingly, the ALJ's error is not harmless, and the Court must remand for further proceedings consistent with this Order.

United States District Court
Northern District of California

### B.      The Scope of Remand

Plaintiff asks that the Court instead remand for an award of benefits under the credit-as-true rule; however, this is not appropriate under the facts of this case.  A court may remand for an award of benefits under this rule where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014).  Each part of this three-part standard must be satisfied for the court to remand for an award of benefits.  *Id*.  The Plaintiff here fails to satisfy either the first or the third prong of the credit-as-true rule.  Under prong one of the rule, the record is not fully developed due to the lack of sufficient VE testimony, and under prong three, even if Dr. Pon's opinion were credited as true, the ALJ could still find that Plaintiff is not disabled on remand.

### i.      The Record is Incomplete as to Whether Plaintiff Can Perform Any Work in the National Economy and Further Proceedings Would Clarify This Point

The Court should not remand for an award of benefits if the record has not been fully developed and further administrative proceedings would serve a useful purpose.  *Garrison*, 2014 WL 3397218 at *20.  The testimony of the VE as it currently stands in the record fails to address Plaintiff's limitations (e.g. occasional right-arm reaching) as supported by the ignored opinion of Dr. Pon.  Where VE testimony fails to address a claimant's limitations as established by improperly discredited evidence, courts remand for further proceedings rather than payment of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

### ii.      If Dr. Pon's Opinion Were Credited as True, the ALJ Could Still Find That Plaintiff is Not Disabled

In *Garrison*, the Ninth Circuit held that a district court abused its discretion by remanding for further proceedings where the credit-as-true rule was satisfied.  *Garrison*, 12-15103, 2014 WL 3397218 at *21.  Yet in *Garrison*, that conclusion "follow[ed] directly" from the court's analysis of multiple ALJ errors and the strength of a variety of improperly discredited evidence which the court credited as true: multiple treating physicians all deemed the plaintiff to be disabled, the

United States District Court
Northern District of California

plaintiff testified to an array of severe physical and mental impairments, and a VE explicitly testified that a person with the impairments described by the plaintiff or her medical caretakers could not work.  Based on this evidence Garrison satisfied the third prong of the credit-as-true standard.  *Id.* at *22.

Here, Plaintiff challenges only the ALJ's discrediting of one portion of Dr. Pon's opinion. In concluding that the ALJ impermissibly dismissed the "occasional right upper extremity reaching" limitation of Dr. Pon's opinion, the Court is addressing only on a small portion of the ALJ's analysis.  A complete invalidation of the ALJ's finding that Plaintiff is not disabled does not follow directly from this relatively minor error.

In further contrast to *Garrison*, as discussed *supra* Part B.1, here, the VE's testimony was completely inconclusive as to whether a person with the impairments described by the plaintiff or her medical caretakers could work.

In sum, the Court's conclusion that the ALJ erred in implicitly rejecting part of Dr. Pon's opinion without setting forth legitimate and specific reasons for doing so does not undermine the ALJ's overall conclusion that Plaintiff is not under a disability.  Thus, the Court remands for further proceedings because under prong three of the credit-as-true rule, even if Dr. Pon's opinion were credited as true, the ALJ would not be required to find Plaintiff disabled on remand.

## CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED IN PART and Defendant's motion for summary judgment is DENIED.  This matter is REMANDED for further proceedings by the ALJ.

**IT IS SO ORDERED.**

Dated:  August 20, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

15